UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

DEMARCO ARNOLD,

Defendant.

CRIMINAL ACTION NO.
1:25-CR-00277-JPB

## ORDER

This matter comes before the Court on United States Magistrate Judge Justin

S. Anand's Report and Recommendation ("R. & R.") [Doc. 33].  This Court finds

as follows:

## BACKGROUND

On November 5, 2024, Atlanta Police Department Officers Tompkins and

White (collectively, the "Officers") observed a group of individuals, including

Defendant, congregating at a bus stop "in an area known for crime."  [Doc. 33, pp.

1–2].  The Officers saw that Defendant was wearing "a tight spandex-type

headcovering obscuring his hair, back of his head, ears and neck."[1]  Id. at 2.  The

---

[1] The parties dispute whether Defendant's face was covered.  In the R. & R., the
Magistrate Judge determined that "Defendant's 'face' was not obscured although most of
the rest of his head was obscured at least at the beginning of the encounter."  [Doc. 33, p.
2].  Neither party objects to this conclusion and, based on the record, the Court finds no
error in the Magistrate Judge's determination.

Officers pulled up to the bus stop without activating lights, sirens or issuing any commands.  Id.  As the Officers approached, Defendant and another individual walked away from the bus stop and began to cross the street of a busy road outside of the designated crosswalk.  Id.  At this point, the Officers conducted a U-turn to intercept Defendant but they still did not activate their patrol lights nor did they brandish any weapons.  Id.; [Doc. 29, p. 18].  After parking the patrol car, the Officers approached Defendant and the other individual crossing the street and yelled, "let me holler at you."  [Doc. 33, pp. 2–3].  Defendant began to run away and the Officers chased him and eventually apprehended him.  Id. at 3.  Based on one officer's report that Defendant threw something while fleeing, Officer White searched the area and found a firearm.  Id.

Defendant, a convicted felon, was charged with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  [Doc. 1].  In his motion, Defendant seeks the suppression of his statements and the recovered firearm—claiming that they were obtained in violation of his Constitutional rights because the Officers lacked "the requisite reasonable suspicion to seize him." [Doc. 22, p. 3].  In the R. & R., the Magistrate Judge recommends denial of Defendant's Motion to Suppress.  [Doc. 33].  Defendant filed objections to the R. & R., [Doc. 35], and the matter is ripe for review.

**LEGAL STANDARD**

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), courts review any portion of a report and recommendation subject to a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard.

Notably, a party objecting to a recommendation "must specifically identify those findings objected to," and "[f]rivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  Placing this burden on the objecting party "facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act."  United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009).

**ANALYSIS**

In his objections, Defendant contends that:  (1) the Officers' investigative seizure began when they pulled up to the bus stop; (2) he did not "walk 'quickly' or 'briskly' away" from the Officers as they pulled up to the bus stop nor did he walk away with the intent to "evade law enforcement"; and (3) the Officers

3

initiated a Terry stop without reasonable suspicion when they prevented him from leaving.  [Doc. 35].

The Fourth Amendment protects individuals from unreasonable seizures. U.S. Const. amend. IV.  In light of this protection, an officer "may briefly detain a person for an investigatory stop" only "if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity."  United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing Terry v. Ohio, 392 U.S. 1 (1968)).  Reasonable suspicion requires a lower degree of certainty than probable cause, but an officer must have "some minimal level of objective justification" for an investigatory stop.  United States v. Sokolow, 490 U.S. 1, 7 (1989) (citation modified).  The "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."  Illinois v. Wardlow, 528 U.S. 119, 125 (2000).  Courts ask whether, based on the totality of the circumstances, an officer had a "particularized and objective basis" for suspecting criminal activity on the part of the individual.  United States v. Cortez, 449 U.S. 411, 417–18 (1981).

"A 'seizure' does not occur every time a police officer interacts with a citizen."  United States v. Knights, 989 F.3d 1281, 1286 (11th Cir. 2021). "Officers are free to approach individuals on the street or in other public places and

4

put questions to them if they are willing to listen." Id. (citation modified).  In such instances, an officer "need[s] no suspicion because the Fourth Amendment is not implicated." Id.  Thus, an investigative stop only occurs when an "officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011) (quoting Terry, 392 U.S. at 19 n.16).  "The test for whether the officer restrained a citizen's liberty is whether 'a reasonable person would feel free to terminate the encounter.'" Knights, 989 F.3d at 1286 (quoting United States v. Drayton, 536 U.S. 194, 201 (2002)).

## I.  Defendant's Objection as to When the Investigatory Stop Began

In his first objection, Defendant argues that the Magistrate Judge "erroneously relie[d]" on Knights when finding that the Officers' approach at the bus stop constituted a "consensual encounter rather than an investigative seizure." [Doc. 35, p. 2].  Defendant contends that Knights is distinguishable because the officers in Knights "didn't stop the defendant from walking away" while, in this case, Officers "immediately stopped" Defendant. Id. at 2–3.  Defendant asserts that because "his liberty was restrained," he "was subject to an investigative seizure from the moment the officers arrived at the bus stop to prevent his departure." Id. at 3.

5

After a *de novo* review, this Court finds no error in the Magistrate Judge's conclusion that Officers "did not engage in an investigative seizure by simply pulling up to the bus stop." [Doc. 33, p. 5]. In considering whether an individual in Defendant's position would have reasonably felt detained, the Magistrate Judge emphasized that "[t]he facts show no display of lights, sirens, or weapons, or that [the Officers] even spoke to Defendant" at the bus stop. Id. at 6–7. Indeed, when the Officers pulled up to the bus stop, Defendant felt free to leave and *did* in fact leave. [Doc. 29, p. 40]. Thus, the Magistrate Judge correctly concluded that, under Knights, the Officers' approach represented a consensual encounter rather than an investigatory stop. 989 F.3d at 1286–87 (emphasizing that officers did not engage in a seizure when they approached an individual without blocking his path, activating their own lights and sirens or preventing the individual from leaving); see also Miller v. Harget, 458 F.3d 1251, 1257–58 (11th Cir. 2006) (finding that an officer did not engage in a seizure by parking behind a person's car and partially blocking their path before approaching). Accordingly, this objection is **OVERRULED**.

## II. Defendant's Objection as to Whether He Walked Away "Quickly" and to "Evade Law Enforcement"

In his second objection, Defendant challenges the Magistrate Judge's characterization that he walked away "quickly" and with the intent to "evade law

6

enforcement." [Doc. 35, pp. 3–4]. Instead, Defendant contends that he walked away "at a normal rate of speed" and argues that the Magistrate Judge "merely speculat[ed] that [he] left specifically to evade law enforcement." Id. Accordingly, Defendant claims that "[h]is choice to walk away should not be used to bolster reasonable suspicion for his detention." Id. at 4.

After reviewing the record, this Court finds no error in the Magistrate Judge's conclusions. During the evidentiary hearing, Officer Tompkins testified that Defendant walked away from the bus stop "quickly" after the Officers pulled up. [Doc. 29, pp. 14, 27]. Officer White further testified that Defendant "immediately started walking away once he saw law enforcement presence" and that such behavior "wasn't normal." Id. at 52–53. Importantly, even if a defendant's actual intention in walking away is not to evade law enforcement, an officer "is permitted to draw inferences, or make common-sense conclusions, from the objective facts based on his or her experience in deciding whether reasonable suspicion exists." Gainor v. Douglas County, 59 F. Supp. 2d 1259, 1275 (N.D. Ga. 1998). Indeed, "any kind of flight, even walking away, might support a finding of reasonable suspicion." United States v. Franklin, 323 F.3d 1298, 1302 (11th Cir. 2003). Thus, the Court finds no error in the Magistrate Judge's characterization that Defendant walked away quickly and to avoid law enforcement.

7

Even if this Court concluded that Defendant did not walk away "quickly" or for the purpose of avoiding the Officers, the Court nevertheless finds that—at this point in their interaction with Defendant—the Officers possessed reasonable suspicion for an investigatory stop because they witnessed Defendant cross a busy street outside of the designated crosswalk. See O.C.G.A. § 40-6-92(c) ("Between adjacent intersections at which traffic-control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk."); [Doc. 29, p. 17] ("Q: Officer Tompkins, did you conclude that [Defendant] was in violation of the law by crossing the street outside of the crosswalk?  A:  Yes, sir."). Accordingly, this objection is **OVERRULED**.

### III.  Defendant's Objection as to the Magistrate Judge's Finding of Reasonable Suspicion

Defendant also objects to the Magistrate Judge's conclusion that, even if the Officers initiated a Terry stop by asking Defendant to speak with them, the detention was justified by reasonable suspicion.  [Doc. 35, pp. 4–7].  Rather, Defendant asserts that he was "lawfully at a bus stop" and that he "calmly exercised his right to merely walk away"—giving rise to no reasonable suspicion to support an investigatory stop.  Id. at 6.

After a *de novo* review, this Court finds no error in the Magistrate Judge's determination because, even if the Officers executed a Terry stop when they

8

approached Defendant, they had reasonable suspicion to justify the stop. The Magistrate Judge correctly reasoned that the suspected face covering violation,[2] Defendant's choice to walk away from the approaching Officers "across a busy city road" and Defendant's presence in a "high crime area" supported reasonable suspicion for a Terry stop.[3]  [Doc. 33, p. 8]; see, e.g., United States v. Gordon, 231 F.3d 750, 755–56 (11th Cir. 2000) (finding reasonable suspicion where the defendant was in an area known for drug sales and walked towards his car when police arrived); United States v. Briggman, 931 F.2d 705, 709 (11th Cir. 1991) (finding reasonable suspicion where a defendant was parked in a high crime area and attempted to avoid an officer by driving away). And again, the illegal street crossing alone was sufficient to support a finding of reasonable suspicion at that

---

[2] See O.C.G.A. § 16-11-38(a) (prohibiting a person from "wear[ing] a mask, hood, or device by which any portion of his or her face is so hidden, concealed, or covered as to conceal his or her identity" on "any public way or public property"); [Doc. 29, p. 12] ("Q:  All right.  Did you suspect that [Defendant] may be in violation of Georgia law banning face coverings?  A:  Yes, sir.").

[3] Defendant points out that "no signs of any criminal activity [had occurred] on the night of [his] arrest." [Doc. 35, p. 4].  But courts may consider whether the area itself is a "high crime area."  Wardlow, 528 U.S. at 124 (explaining that an individual's presence in a "high crime area" can go towards a finding of reasonable suspicion because officers "are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation").

point in the interaction.[4]  [Doc. 33, p. 8]; see United States v. Allen, 447 F. App'x

118, 121 (11th Cir. 2011) (finding that officers had reasonable suspicion for a

Terry stop after witnessing an individual cross the street in front of oncoming

traffic in violation of a local ordinance).  Accordingly, this objection is

**OVERRULED**.

### CONCLUSION

For the foregoing reasons, Defendant's objections are **OVERRULED** and

the R. & R. [Doc. 33] is **ADOPTED** as the order of the Court.  For the reasons

stated in the R. & R. and the reasons explained herein, Defendant's Motion to

Suppress [Doc. 22] is **DENIED**.

**SO ORDERED** this 9th day of July, 2026.

_____
**J. P. BOULEE**
United States District Judge

---

[4] According to Defendant, the Officers' choice to detain him as opposed to "another man [who] was crossing the street at the same time and in the same manner" demonstrates that they were not detaining him because of the suspected jaywalking violation. [Doc. 35, p. 6].  However, Defendant provides no support for the proposition that if an officer stops one perpetrator of an offense and not another, then the officer can no longer use that offense conduct as the basis for reasonable suspicion.